UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

YUNIOR AQUINO, on behalf of          :
himself, individually, and
on behalf of all others             :
similarly situated, et al.,
                                     :     16 Civ. 390 (HBP)
                Plaintiffs,
                                     :     OPINION
     -against-                             AND ORDER
                                     :
FORT WASHINGTON AUTO BODY
CORP., et al.,                       :

                Defendants.    :

-----------------------------------X

                    PITMAN, United States Magistrate Judge:

          This matter is before me on a joint application to
approve a settlement between plaintiff Ismael Santana and defen-
dants and a separate settlement between the remaining plaintiffs
and defendants.  All parties have consented to my exercising
plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

          This is an action brought by seven individuals who were
or are employed by defendants.  Plaintiffs allege that they were
not paid for overtime work and did not receive proper wage
statements.  Plaintiffs assert their claims under the Fair Labor
Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and various
provisions of the New York Labor Law (the "NYLL").  The action
was commenced as a collective action with respect to the FLSA

claim, and the parties stipulated to the matter proceeding as a collective action.

Defendants deny plaintiffs' allegations. They contend that plaintiffs' salaries covered all hours worked and included an additional amount for their overtime hours. Defendants also dispute the number of hours that plaintiffs claim to have worked. Moreover, defendants assert that Santana was a manager and, thus, exempt from the federal and state overtime requirements.

I held a lengthy settlement conference on September 29, 2016 that was attended by Santana and his counsel. At the conference, Santana claimed he was owed either $58,133.86 or $239,802.19 in unpaid wages, depending on whether the wages he received were intended to compensate him for all hours worked or only for the first forty hours. After a protracted discussion of the strengths and weaknesses of the parties' respective posi-tions, Santana and defendants agreed to resolve his claim for a total settlement of $38,500.00. The parties have also agreed that $230.21 of the settlement figure will be allocated to reimburse Santana's counsel for their out-of-pocket costs, $15,400.00 (or 40%) of the remaining $38,269.79 will be paid to Santana's counsel and that the balance of $22,869.79 will be paid to Santana.

2

The remaining plaintiffs and defendants have agreed to a total settlement of $170,000.00, to be distributed among the plaintiffs on a pro rata basis. The parties have also agreed that, after deduction of out-of-pocket costs, plaintiffs' counsel will receive one-third of each plaintiff's recovery as attorneys' fees. The amounts claimed by each of the remaining plaintiffs,[1] the gross amount of the settlement fund allocable to each plaintiff and the net amount that will be received by each plaintiff after deduction for legal fees and costs are as follows:

| Plaintiff | Amount Claimed | Gross Allocable Share | Allocable Share of Costs | Allocable Share of Fees | Net Allocable Share |
|-----------|----------------|-----------------------|--------------------------|-------------------------|---------------------|
| Yunior Aquino | 36,909.88 | 37,878.62 | 277.78 | 12,626.21 | 24,974.63 |
| Ramon Sanchez | 39,654.37 | 40,695.13 | 298.43 | 13,565.04 | 26,831.66 |
| Dominguez Celso | 29,784.87 | 30,566.61 | 224.15 | 10,188.87 | 20,153.59 |
| Dony Almanzar | 29,447.62 | 30,220.50 | 221.62 | 10,073.50 | 19,925.38 |
| Jairo Pujols | 6,433.33 | 6,602.18 | 48.41 | 2,200.73 | 4,353.04 |
| Antonio Diaz | 23,422.22 | 24,036.96 | 176.27 | 8,012.32 | 15,848.37 |
| **TOTAL** | **165,652.29** | **170,000.00** | **1,246.66** | **56,666.67** | **112,086.67** |

This settlement was reached prior to the settlement conference I conducted between Santana and defendants.

A preliminary review of both proposed settlements reveals problems. First, I cannot approve the agreement between

---

[1]The amount claimed by each of the plaintiffs purportedly includes the allegedly unpaid overtime (assuming that the wages paid represented straight time pay for all hours actually worked), liquidated damages and statutory damages for alleged violations of New York's Wage Theft Prevention Act.

3

Santana and defendants because it contains an impermissible
general release.  In pertinent part, the release provides:

> [T]he Parties, with respect solely and only to conduct
> that has arisen on, or prior to, the date that this
> Agreement is executed, knowingly and voluntarily, fully
> and forever, release . . . all actions, causes of
> action . . . including but not limited to those arising
> under:  the Fair Labor Standards Act ("FLSA"); the New
> York Labor Law ("NYLL"); the FLSA's and NYLL's imple-
> menting regulations; any alleged violation of federal,
> state or local laws prohibiting discrimination . . .;
> any other federal, state or local civil or human rights
> laws . . .[;] the Employee Retirement Income Security
> Act; the Fair Credit Reporting Act, as amended; the
> Sarbanes-Oxley Act; any public policy, contract, tort
> or common law obligation . . .; any claim for wages or
> other compensation under any federal or state wage
> payment laws, and their implementing regulations; any
> claim for compensation, bonus, incentive pay, vacation
> pay, sick pay, separation or severance payments of any
> kind, or any other payments or benefits; and any obli-
> gation for costs, fees or other expenses, including but
> not limited to, claims for minimum wages, overtime and
> liquidated damages.

(Letter from Kevin A. Guaranda, Paralegal, to the undersigned,
dated Nov. 16, 2016 ("Guaranda Letter"), Ex. 1 ¶ 4).  "[T]he
Parties" are defined as Santana and "[defendants], their parents,
subsidiaries, affiliates, successors and assigns, divisions,
vendors, customers, their past and present officers, owners,
shareholders, directors, principals, employees, former employees,
representatives, service providers, counsel and/or agents . . .
and each of their respective successors and assigns" (Guaranda
Letter, Ex. 1, at 1).

4

Courts routinely reject general releases in FLSA cases
that run only in favor of the defendant and are not limited to
wage-and-hour issues.  See Leon-Martinez v. Central Café & Deli,
15 Civ. 7942 (HBP), 2016 WL 7839187 at *1 (S.D.N.Y. Dec. 19,
2016) (Pitman, M.J.) (collecting cases); see also Boyle v. Robert
M. Spano Plumbing & Heating, Inc., 15 Civ. 2899 (KMK), 2016 WL
1688014 at *3 (S.D.N.Y. Apr. 27, 2016) (Karas, D.J.) (approving
"broad" release because it was limited to "'conduct set forth in
the Lawsuit including, claims arising under or pursuant to the
Fair Labor Standards Act, 29 U.S.C. §[§] 201 et seq. and New York
Labor Law, and its governing regulations'").  The authorities are
more divergent, however, when the general release is mutual, such
as the release here.  On the one hand, "[a] mutual release will
ensure that both the employees and the employer are walking away
from their relationship . . . without the potential for any
further disputes."  Souza v. 65 St. Marks Bistro, 15 Civ. 327
(JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 6, 2015) (Cott,
M.J.).  Additionally, "[a] general release of the kind proposed
in this case, with [a] former employee[] who ha[s] no ongoing
relationship with the employer, makes sense in order to bring
complete closure."  Souza v. 65 St. Marks Bistro, supra, 2015 WL
7271747 at *5.  On the other hand, "despite the formal reciproc-
ity of such releases, their practical effect in some cases may be

lopsided because they may stand to benefit only the employer
defendant, who realistically may be less likely than the employee
plaintiff to have latent claims against its adversary"; the
employer's release may "appear[] an empty gesture." Gurung v.
White Way Threading LLC, 16 Civ. 1795 (PAE), 2016 WL 7177510 at
*2 (S.D.N.Y. Dec. 8, 2016) (Engelmayer, D.J.).

A general release between Santana and defendants is
permissible because Santana is no longer employed by defendants
and defendants' release would not necessarily be an empty ges-
ture.[2]  However, the issue with the release here, like the one in
Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y.
2016) (Moses, M.J.), is that it would bar claims not only against
defendants themselves, but also against defendants' vendors,
customers, former employees and other unrelated persons or
entities.  The reverse is also true:  these unrelated persons or
entities would be barred from suing Santana.  "As written, this
language could be applied to absurd effect."  Lopez v. Poko-St.
Ann L.P., supra, 176 F. Supp. 3d at 344.  For example, Santana
would not be able to sue one of defendants' customers for breach

---

[2]At the settlement conference, defendants made certain
statements suggesting that they may have had claims against
Santana.  In light of the confidential nature of the settlement
conference, I shall not disclose the content of those statements
on the record.

of contract or for an assault.  Similarly, that customer would

not be able to sue Santana for defamation or intentional inflic-

tion of emotional distress.  Such a result is not only absurd,

but impossible, because defendants cannot release claims for

people or entities over which they have no control.

            Additionally, I note that, after deduction of out-of-

pocket costs, Santana's counsel seeks 40% of the settlement

amount as attorneys' fees.  "[C]ourts in this District have

declined to award more than one third of the net settlement

amount as attorney's fees except in extraordinary circumstances."

Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL

9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.), citing

Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015

WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and

Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 100135

at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); accord Rangel v.

639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL

5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys'

fees of one-third of FLSA settlement amount, plus costs, pursuant

to plaintiff's retainer agreement, and noting that such a fee

arrangement "is routinely approved by courts in this Circuit");

Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337,

340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of

7

the fund is typical" in FLSA cases); accord Calle v. Elite
Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL
6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin.
Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.-
Y. June 22, 2012) (Freeman, M.J.). Counsel justifies this fee by
explaining that Santana's recovery was far from uncertain, and
could have been zero, because defendants claimed Santana was a
manager and exempt from the federal and state overtime require-
ments. However, counsel has not provided any time records
reflecting that this issue required more attention and effort
than usual. If counsel believe a 40% contingency is justified,
they should support this belief with documentation. See Cheeks
v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015)
(noting that settlement provision that would have set attorneys'
fees between 40% and 43.6% of settlement, "without adequate
documentation to support such a fee award," is an example of "the
potential for abuse in [FLSA] settlements"), cert. denied, 136 S.
Ct. 824 (2016), citing Lopez v. Nights of Cabiria, LLC, 96 F.
Supp. 3d 170, 173-82 (S.D.N.Y. 2015) (Kaplan, D.J.); Lopez v.
Poko-St. Ann L.P., supra, 176 F. Supp. 3d at 342-43 (refusing to
approve attorneys' fees totaling more than 40% of settlement
amount, even though there was an issue of whether plaintiffs were
exempt, without information on "the actual time and effort of

8

plaintiffs' counsel"; also noting that early resolution of matter
was factor against awarding the fees sought).

      Second, I cannot approve the settlement between the
remaining plaintiffs and defendants because counsel has not
provided sufficient information for me to determine whether the
settlement is fair and reasonable.  Specifically, while counsel
listed the plaintiffs' maximum potential recovery, which purport-
edly included actual overtime owed (assuming that the wages paid
represented straight time pay for all hours actually worked),
liquidated damages and statutory penalties, counsel provided a
damages calculation only for the three-year period that preceded
the filing of the complaint (the FLSA's statute of limitations).
This damages calculation is not complete because it does not
include the six-year period that preceded the filing of the
complaint (the NYLL's statute of limitations).  Therefore,
counsel are directed to re-submit a damages calculation for the
six-year period that preceded the filing of the complaint so that
I can assess whether the estimates of plaintiffs' maximum poten-
tial recoveries are accurate.

Accordingly, within 30 days of the date of this Order, the parties are to provide the information sought and a revised settlement agreement between Santana and defendants that limits the persons or entities covered by the general release.

Dated:   New York, New York
         March 31, 2017

                                    SO ORDERED

                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

All Counsel of Record

10