UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

YUNIOR AQUINO, on behalf of          :
himself, individually, and
on behalf of all others              :
similarly situated, et al.,
                                     :      16 Civ. 390 (HBP)
               Plaintiffs,
                                     :      OPINION
     -against-                              AND ORDER
                                     :
FORT WASHINGTON AUTO BODY
CORP., et al.,                       :

               Defendants.   :

-----------------------------------X



          PITMAN, United States Magistrate Judge:

          This matter is before me on a joint application to

approve a settlement between plaintiff Ismael Santana and defen-

dants and a separate settlement between the remaining plaintiffs

and defendants (Docket Item ("D.I.") 29, 31).  All parties have

consented to my exercising plenary jurisdiction pursuant to 28

U.S.C. § 636(c).

          This is an action brought by seven individuals who were

or are employed by defendants.  Plaintiffs allege that they were

not paid for overtime work and did not receive proper wage

statements.  Plaintiffs assert their claims under the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and various

provisions of the New York Labor Law (the "NYLL").  The action

was commenced as a collective action with respect to the FLSA
claim, and the parties stipulated to the matter proceeding as a
collective action.

        Defendants deny plaintiffs' allegations.  They contend
that plaintiffs' salaries covered all hours worked and included
an additional amount for their overtime hours.  Defendants also
dispute the number of hours that plaintiffs claim to have worked.
In addition, defendants assert that Santana was a manager and,
thus, was exempt from the federal and state overtime require-
ments.

        I held a lengthy settlement conference on September 29,
2016 that was attended by Santana and his counsel.  At the
conference, Santana claimed he was owed either $58,133.86 or
$239,802.19 in unpaid wages, depending on whether the wages he
received were intended to compensate him for all hours worked or
only for the first forty hours.  After a protracted discussion of
the strengths and weaknesses of the parties' respective posi-
tions, Santana and defendants agreed to resolve his claim for a
total settlement of $38,500.00.  The parties have also agreed
that $230.21 of the settlement amount will be allocated to
reimburse Santana's counsel for their out-of-pocket costs,
$12,833.33 (or approximately one-third) of the remaining

2

$38,269.79 will be paid to Santana's counsel and the balance of $25,436.46 will be paid to Santana.

The remaining plaintiffs and defendants have agreed to a total settlement of $170,000.00, to be distributed among the plaintiffs on a pro rata basis.  The parties have also agreed that, after deduction of out-of-pocket costs, plaintiffs' counsel will receive one-third of the total settlement amount as attorneys' fees.  The amounts claimed by each of the remaining plaintiffs,[1] the gross amount of the settlement fund allocable to each plaintiff and the net amount that will be received by each plaintiff after deduction for legal fees and costs are as follows:

| Plaintiff | Amount Claimed | Gross Allocable Share | Allocable Share of Costs | Allocable Share of Fees | Net Allocable Share |
|---|---|---|---|---|---|
| Yunior Aquino | 25,395.48 | 37,878.62 | 277.78 | 12,626.21 | 24,974.63 |
| Ramon Sanchez | 27,274.21 | 40,695.13 | 298.43 | 13,565.04 | 26,831.66 |
| Dominguez Celso | 18,318.07 | 30,566.61 | 224.15 | 10,188.87 | 20,153.59 |
| Dony Almanzar | 19,242.86 | 30,220.50 | 221.62 | 10,073.50 | 19,925.38 |
| Jairo Pujols | 955.56 | 6,602.18 | 48.41 | 2,200.73 | 4,353.04 |
| Antonio Diaz | 12,155.56 | 24,036.96 | 176.27 | 8,012.32 | 15,848.37 |
| **TOTAL** | **103,341.74** | **170,000.00** | **1,246.66** | **56,666.67** | **112,086.67** |

[1]The amount claimed by each of the plaintiffs includes the allegedly unpaid overtime (assuming that the wages paid represented straight time pay for all hours actually worked) and liquidated damages.  It does not include statutory damages for alleged violations of New York's Wage Theft Prevention Act.

3

This settlement was reached prior to the settlement conference I conducted between Santana and defendants.

I refused to approve an earlier draft of the settlement agreement between Santana and defendants because it contained a general release (D.I. 30). Specifically, the provision not only barred all claims against defendants themselves, but also against unaffiliated persons or entities. I ordered the parties to limit the persons or entities covered by the general release. I also noted that Santana's counsel sought a 40% contingency fee and that such a high fee required justification and documentation.

I also refused to approve an earlier draft of the settlement agreement between the remaining plaintiffs and defendants (D.I. 30). While counsel had listed each plaintiff's maximum potential recovery in their submission seeking settlement approval, they provided a calculation of damages within the FLSA's three-year statute of limitations only, not within the NYLL's six-year statutory period. I ordered the parties to resubmit a damages calculation for the six-year period that preceded the filing of the complaint so that I could assess whether the estimate of plaintiffs' maximum potential recoveries was accurate.

The parties have addressed each of these issues; they have limited the general release and reduced the contingency fee

4

sought in Santana's settlement agreement, and they have submitted a damages calculation for the six-year period that preceded the filing of the complaint for the remaining plaintiffs.

> Court approval of an FLSA settlement is appropriate
>
>> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), citing Lynn's Food Stores, Inc. v. United States, supra, 679 F.2d at 1353-54. The presumption of fairness in this case is bolstered by the caliber of the parties' attorneys. Based upon their performance at the

5

settlement conference that was held, it is clear to me that all parties are represented by counsel who are extremely knowledge-able regarding all issues in the case and who are well suited to assess the risks of litigation and the benefits of the proposed settlements.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settle-ment is fair and reasonable, a court should consider the totality of circumstances, including but not lim-ited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litiga-tion risks faced by the parties; (4) whether the set-tlement agreement is the product of arm's-length bar-gaining between experienced counsel; and (5) the possi-bility of fraud or collusion.

(Internal quotation marks omitted).  The settlement here satis-fies these criteria.

First, Santana's net settlement represents approxi-mately 44% of his claimed damages.  Defendants argue that Santana was exempt from the overtime requirements and is, therefore, entitled to no damages for overtime work.  As discussed in more detail below, given the risks this issue presents, Santana's

6

settlement amount is reasonable.  Additionally, each of the
remaining plaintiffs will receive between 98% and 456% of their
claimed damages after deduction of costs and fees.  Thus, the net
settlement amount provides the remaining plaintiffs with a
substantial percentage of their claimed damages.

Second, the settlement will entirely avoid the burden,
expense and aggravation of litigation.  Defendants did not
maintain accurate time records; instead, the plaintiffs signed in
and out every day.  Defendants also claim that plaintiffs regu-
larly conducted personal matters while at work and took frequent
breaks.  Trial preparation would require several depositions to
explore these issues, and the settlement avoids the necessity of
conducting those depositions.

Third, the settlement will enable plaintiffs to avoid
the risk of litigation.  Plaintiffs here were paid partially in
cash, which defendants claim accounted for plaintiffs' overtime
wages.  In addition, defendants dispute the number of hours
plaintiffs worked.  Additionally, as noted above, defendants take
the position that Santana, as a manager, was an exempt employee
and, therefore, not entitled to overtime.  The Secretary of
Labor's regulations implementing the FLSA state that managers
generally qualify as exempt employees.  Callari v. Blackman
Plumbing Supply, Inc., 988 F. Supp. 2d 261, 275-77 (E.D.N.Y.

2013); Indergit v. Rite Aid Corp., 08 Civ. 9361 (PGG), 08 Civ.

11364 (PGG), 2010 WL 1327242 at *4-*5 (S.D.N.Y. Mar. 31, 2010)

(Gardephe, D.J.).  However, the law is also clear that an em-

ployee's title, by itself, is not determinative of whether he or

she is exempt from the overtime requirements; instead, the court

must examine the nature of the employee's duties.  Reiseck v.

Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir.

2010); Moran v. GTL Constr., LLC, 06 Civ. 168 (SCR), 2007 WL

2142343 at *2 (S.D.N.Y. July 24, 2007) (Robinson, D.J.).  Litiga-

tion would, therefore, require testimony as to the nature of

Santana's duties, which would raise issues of credibility.  Thus,

whether Santana and the other plaintiffs would recover at trial

is far from certain.  See Bodon v. Domino's Pizza, LLC, No. 09-

CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015)

(Report & Recommendation) ("[T]he question [in assessing the

fairness of a class action settlement] is not whether the settle-

ment represents the highest recovery possible . . . but whether

it represents a reasonable one in light of the many uncertainties

the class faces . . . ." (internal quotation marks omitted)),

adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL

588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health

Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.-

Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment

of substantial amounts to class members, even if it means sacri-
ficing speculative payment of a hypothetically larger amount
years down the road, settlement is reasonable . . . ." (internal
quotation marks omitted; assessing fairness of class action
settlement)).

        Fourth, I am confident that the settlements are reason-
able based on their being agreed to by plaintiffs' counsel.
Plaintiffs' counsel was exceptionally well prepared at the
settlement conference between Santana and defendants and was
fully familiar with the claims and the pertinent legal and
factual issues.  Given the exceptional diligence and zeal with
which plaintiffs' counsel represented Santana, I am confident
that the settlements are fair.

        Fifth, there are no factors here that suggest the
existence of fraud or collusion.

        Each settlement agreement also provides that, after
deduction of out-of-pocket costs, one-third of the total settle-
ment amount will be paid to plaintiffs' counsel as a contingency
fee.  Contingency fees of one-third in FLSA cases are routinely
approved in this circuit.  Santos v. EL Tepeyac Butcher Shop
Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15,
2015) (Abrams, D.J.) ("[C]ourts in this District have declined to
award more than one third of the net settlement amount as attor-

9

ney's fees except in extraordinary circumstances."), citing Zhang
v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL
5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and
Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135
at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639
Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL
5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys'
fees of one-third of FLSA settlement amount, plus costs, pursuant
to plaintiff's retainer agreement, and noting that such a fee
arrangement "is routinely approved by courts in this Circuit");
Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337,
340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of
the fund is typical" in FLSA cases); accord Calle v. Elite
Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL
6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin.
Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.-
Y. June 22, 2012) (Freeman, M.J.).

        Accordingly, for all the foregoing reasons, I approve
the settlements in this matter.  In light of the settlements, the

action is dismissed with prejudice and without costs.   The Clerk

of the Court is respectfully requested to mark this matter

closed.

Dated:   New York, New York
         May 23, 2017

                                        SO ORDERED

                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

All Counsel of Record

11